**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **NEHEMIAH J.[1]**, | Case No. 6:22-cv-166-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **KILOLO KIJAKAZI,** Acting Commissioner of Social Security, | |
| Defendant. | |

Sherwood J. Reese & Luke Moen-Johnson, DREW L. JOHNSON, P.C., 1700 Valley River Drive, Suite 100, Eugene, OR 97401. Of Attorneys for Plaintiff.

Natalie K. Wight, United States Attorney, and Kevin Danielson, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Benjamin J. Groebner, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. OfAttorneys for Defendant.

**Michael H. Simon, District Judge.**

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member and close family friend.

Plaintiff Nehemiah J. seeks judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's application for supplemental security income (SSI) under Title XVI of the Social Security Act. For the reasons discussed below, the Court REVERSES the Commissioner's finding that Plaintiff is not disabled and REMANDS for further proceedings consistent with this Opinion and Order.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A.  Plaintiff's Application

Plaintiff was born on February 27, 2001. AR 15. Plaintiff applied for SSI on May 3, 2019, alleging disability beginning on his date of birth. *Id.* His claim was denied initially on October 1, 2019, and upon reconsideration on March 9, 2020. *Id.* Plaintiff requested a hearing before an administrative law judge (ALJ) on March 18, 2020. *Id.*

At the telephonic hearing before ALJ Steven A. De Monbreum on January 12, 2021, Plaintiff amended his alleged onset date to coincide with his application date of May 3, 2019. *Id.* Plaintiff was 18 years old as of his amended alleged disability onset date. Judge De Monbreum issued an opinion finding that Plaintiff was not disabled and denying Plaintiff's SSI claim on February 22, 2021. AR 22. The Appeals Council declined to review Plaintiff's appeal on December 14, 2021, making final the ALJ's decision. AR 1. Plaintiff now appeals to this Court.

### B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. § 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R.

§§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.  Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.  Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the

Commissioner must show that the claimant can perform work that exists in significant numbers

in the national economy, "taking into consideration the claimant's residual functional capacity,

age, education, and work experience." *Id.*; *see also* 20 C.F.R. § 416.966 (describing "work which

exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is

disabled. 20 C.F.R. § 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant

is able to perform other work existing in significant numbers in the national economy, the

claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

At step one of the sequential analysis, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since his application date of May 3, 2019. AR 17. At step two, the

ALJ identified Plaintiff's severe impairments, including autism spectrum disorder, attention

deficit hyperactivity disorder (ADHD), neurodevelopmental disorder in the form of a math

learning disability, and depressive disorder. *Id.* The ALJ also deemed non-severe Plaintiff's

obesity, sleep apnea, and blindness in his right eye. *Id.*

At step three, the ALJ found that Plaintiff did not meet the severity requirements of any

listed impairment in 20 C.F.R. Part 404, Subpt. P, App'x 1 (hereinafter Listing). AR 18. The ALJ

considered Listings 12.04 (depressive, bipolar, and related disorders), 12.10 (autism spectrum

disorder), and 12.11 (neurodevelopmental disorders). *Id.*

The ALJ next assessed Plaintiff's RFC. The ALJ determined that Plaintiff

> has the residual functional capacity to perform a full range of work
> at all exertional levels but with the following non-exertional
> limitations: he is limited to simple routine tasks with DOT GED

> reasoning level of 2 or less. He can occasionally interact with
> public and coworkers. He needs a static work environment with
> few changes in work routines and settings. He is limited to work
> that does not require good math skills.

AR 19. At step four, the ALJ found that Plaintiff has no past relevant work. AR 21. At step five,

based on testimony from a vocational expert as well as Plaintiff's age, education, work

experience, and RFC, the ALJ found that Plaintiff could work jobs that exist in significant

numbers in the national economy, including hand packager, battery stacker, and floor waxer.

AR 22. Thus, the ALJ found that Plaintiff is not disabled as that term is defined under the Act.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (A) rejecting Plaintiff's symptom testimony

without basis, (B) improperly assessing medical opinions in the record, and (C) failing to address

lay witness testimony. The Court addresses each argument in turn.

## A.  Subjective Symptom Testimony

### 1.  Standard

A claimant "may make statements about the intensity, persistence, and limiting effects of

his or her symptoms." SSR 16-3p, *available at* 2017 WL 5180304, at *6 (Oct. 25, 2017).[2] There

is a two-step process for evaluating a claimant's testimony about the severity and limiting effect

of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the

ALJ must determine whether the claimant has presented objective medical evidence of an

underlying impairment 'which could reasonably be expected to produce the pain or other

---

[2] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by
SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy.
SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166
(Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in
this Opinion and Order.

symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id*. at 1036 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p at *2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history,

treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information about the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

### 2.  Analysis

Plaintiff argues that the ALJ erred by (a) disregarding Plaintiff's testimony that he struggles with fine motor skills, a functional limitation that the ALJ neither discussed nor incorporated into Plaintiff's RFC. Plaintiff also argues that the ALJ erred in finding that (b) Plaintiff's testimony about his remaining symptoms conflicted with his activities of daily living and that (c) his claimed limitations were not supported by objective medical evidence. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of Plaintiff's alleged symptoms, but not to the extent claimed by Plaintiff. AR 20. Thus, the second step of the analysis required the ALJ to offer clear and convincing reasons to reject Plaintiff's testimony about the severity of his symptoms.[3]

_____

[3] The Commissioner also asserts that the ALJ discounted Plaintiff's symptom testimony in part because the record suggested that Plaintiff's ADHD symptoms had improved with treatment, and that Plaintiff stopped taking his medication despite experiencing no side effects. AR 392. In general, an ALJ may consider a claimant's "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" when assessing the claimant's credibility. *Smolen*, 80 F.3d at 1284. Despite the Commissioner's argument, however, the ALJ did not mention that Plaintiff discontinued his treatment. "Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual

### a. Motor Skills

Plaintiff first contends that the ALJ erred in disregarding Plaintiff's dexterity issues. Plaintiff testified that his limited dexterity hampers him from building models that require glue or paint, AR 36; that he struggles with penmanship and precise movements in video games, AR 54-55; and that he tends to "drop things or knock things over," AR 55. Evidence in the record supports Plaintiff's testimony that his motor skills are limited. For example, in an Oregon Needs Assessment dated November 11, 2020, assessor Amy L. Bray observed that Plaintiff "needs help cutting any food that is small due to issues with fine motor skills," "does not have very good fine motor skills to do certain household tasks," "does not always get [his shirts] on the hangers correctly due to challenge with fine motor skills," and "breaks a lot of objects due to difficulties with his fine motor skills." AR 441-51; *see also* AR 466 ("[Plaintiff] also lacks fine and gross motor skills such as: manual dexterity, struggles with latent reactions to environmental circumstances, has problems managing the use of finesse or force while handling tasks at hand, poor handwriting, and awkward body movements."). Plaintiff argues that the ALJ should have incorporated this limitation into the RFC or explained why it was excluded.[4]

The ALJ disregarded Plaintiff's testimony on this symptom without comment. Thus, the ALJ did not give clear, convincing, and specific reasons to discredit Plaintiff's testimony. *See*

---

findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray*, 554 F.3d at 1225. The Court thus does not address this argument from the Commissioner.

[4] Plaintiff makes a similar argument about his claim that he struggles to respond appropriately to authority figures. This argument fails because the ALJ did address Plaintiff's asserted "social deficits" and related symptoms. AR 20-21. The ALJ's assessment here was "sufficiently specific to allow a reviewing court" to avoid speculating on why the ALJ rejected the claimant's testimony. *Bunnell*, 947 F.2d at 345. The Court thus need not consider this argument from Plaintiff further.

*Smolen*, 80 F.3d at 1281. The Commissioner responds that the ALJ properly discounted Plaintiff's testimony on his motor skill deficiencies because the ALJ found Plaintiff lacked credibility on other topics. The ALJ, however, did *not* find that Plaintiff lacked credibility. At most, the ALJ stated that creditable contemporaneous medical evidence conflicted with Plaintiff's symptom severity testimony. This assessment does not cast doubt on Plaintiff's creditworthiness in general, nor does the ALJ suggest that Plaintiff malingered in testifying. If the ALJ had credited Plaintiff's testimony about his motor skills, the ALJ may have tailored a more limited RFC or a different disability determination for Plaintiff. Accordingly, the ALJ committed harmful error in neglecting to respond to Plaintiff's dexterity limitations.

The Commissioner cites two cases in support of the proposition that a claimant's lack of credibility on one topic can impugn the claimant's allegations on other topics, but misstates the holdings from these cases. Rather, in these cases the ALJs discounted the claimants' testimony due to their lack of candor on related issues. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010) ("The ALJ also found that Turner was not entirely credible because he had made exaggerated statements about the intensity and persistence of his physical impairments. During his hearings and on his disability application, Turner stated that his back pain limited his ability to stand, sit, and walk, but then described that his work on the ranch involved building fences, running a tractor, feeding cattle, and laying irrigation waterlines."); *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (noting the ALJ found that claimant "failed to give maximum or consistent effort during two physical capacity evaluations" and so "interpreted Ms. Thomas' self-limiting behaviors to argue strongly as to her lack of credibility" (quotation marks omitted)). These cases do not support the Commissioner's argument that the ALJ's

findings on unrelated limitations means the ALJ did not need to respond to Plaintiff's testimony or evidence about his motor skill challenges.

Further, those cases were decided before the Commissioner changed its rules governing how to evaluate a claimant's subjective testimony. The Commissioner specifically removed the word "credibility" from its rules and instructed that the evaluation of a claimant's testimony "is not an examination of an individual's character." SSR 16-3p. Instead, the new rule instructs that an ALJ must evaluate the evidence in the record in considering the intensity and persistence of the alleged symptoms. Thus, the Commissioner's argument that a finding that evidence may not support one symptom can be construed as general credibility determination and discount another symptom runs afoul of SSR 16-3p.

### b. Activities of Daily Living

Daily living activities may justify discounting subjective symptoms if the claimant's activities either contradict his testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn*, 495 F.3d at 639. "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities cannot discount subjective symptom testimony. The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations").

The ALJ dismissed Plaintiff's subjective symptom testimony in part because, in the ALJ's view, a report in favor of a disability finding by qualified mental health professional Joanna Van conflicted with Plaintiff's activities of daily living. The ALJ states that Van's opinion specifically conflicts with Plaintiff's volunteering for Catholic Charities and his hobbies of assembling models and working on computers. AR 21. The ALJ does not explain, however, *how* these activities conflict with Van's observations of Plaintiff's functional limitations or with Plaintiff's subjective symptom testimony.

The record include details of these activities that might support the ALJ's conclusion. Plaintiff's volunteering, for example, appears in a single treatment note from February 18, 2020, without any elaboration as to what Plaintiff's volunteer work consisted of, for how long he volunteered, how often he volunteered, or any other relevant information. AR 380. The Commissioner argues that the ALJ drew a reasonable inference from this evidence that Plaintiff's volunteering involved a social element, but this inference is neither reasonable from the scant evidence nor, even if true, in conflict with Plaintiff's testimony or Van's opinion.

References in the record to Plaintiff's hobbies of building models and computers also do not contradict Van's assessment. A holistic review of the record does not reveal any inconsistencies: though Plaintiff maintained concentration while building models and computers, AR 36-37, he stated that he struggles to concentrate on things that he views as uninteresting, AR 43. The claim that Plaintiff can spend time on his hobbies conflicts with neither his testimony that he generally struggles to concentrate nor a medical opinion observing that his behavior and attention span would hamper him in holding a job. "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to

rest periodically or take medication." *Smolen*, 80 F.3d at 1284 n.7; *see also Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."). The ALJ thus erred in disregarding Plaintiff's symptom testimony because of his activities of daily living.

### c.  Objective Medical Evidence

An ALJ may consider the lack of corroborating objective medical evidence as a "relevant factor in determining the severity of the claimant's" alleged symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, "discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see also Robbins*, 466 F.3d at 883; 20 C.F.R. § 416.929(c)(2) (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

Because the Court has rejected the other reasons proffered by the ALJ, the Commissioner may not rely on the ALJ's recitation of the objective medical evidence and how it purportedly does not corroborate Plaintiff's alleged limitations. This reason alone is not enough to discount Plaintiff's testimony. Thus, the ALJ failed to provide a legally sufficient reason to discount Plaintiff's testimony.

## B.  Medical Opinions

### 1.  Standard

Plaintiff applied for benefits on May 3, 2019. For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 416.920c governs how an ALJ must evaluate medical opinion

evidence. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Under these new regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. § 416.920c(a)-(b). The new regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F. 4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. § 416.920c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support his or her opinion. 20 C.F.R. § 416.920c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. 20 C.F.R. § 416.920c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking to factors such as the length of the treatment relationship, the frequency of the claimant's examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether there is an examining relationship. *Id.* § 416.920c(c)(3). An ALJ is not, however, required to explain how he or she considered these secondary medical factors, unless he or she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* § 416.920c(b)(2)-(3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency

factors." 20 C.F.R. § 416.920c(b). The Court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *see also Woods*, 32 F.4th at 792 ("Our requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions . . . is likewise incompatible with the revised regulations. . . . Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").

### 2. Analysis

#### a. Dr. Taubenfeld

Plaintiff argues that the ALJ erred in disregarding the findings of examining psychologist Dr. Wayne Taubenfeld. The Department of Human Services referred Plaintiff to Dr. Taubenfeld for a psychological evaluation, which Dr. Taubenfeld administered on May 17, 2018. AR 332. In his assessment, Dr. Taubenfeld found that Plaintiff: placed in the fourth percentile for working memory ("borderline") and tenth percentile for processing speed ("low average"), tested among average values for perceptual reasoning and full scale IQ and a superior value for verbal comprehension; earned a "borderline" score for his broad mathematics ability, equivalent to skills at the fifth grade level; experienced "significant interference with academic or occupational performance" as well as "with activities of daily living" due to his learning disorder; achieved high scores on scales used to measure one's "Autism's Quotient"; displayed "clinically significant levels of ADHD symptoms"; and placed in the "Extremely Low range" of a test designed to measure one's overall adaptive functioning. AR 334-42. Dr. Taubenfeld also included several qualitative findings about Plaintiff's autism spectrum disorder, noting that Plaintiff displayed compulsive behavior, threw tantrums when frustrated, and had difficulties with changes, among others. AR 338.

Plaintiff asserts that the ALJ erred by failing to articulate how "persuasive" he found Dr. Taubenfeld's findings. As Plaintiff observes, the ALJ only referenced Dr. Taubenfeld's examination—though not by name—when evaluating the severity of Plaintiff's impairments at step three. AR 18-19. The ALJ does not cite or mention Dr. Taubenfeld's report when describing Plaintiff's RFC or comparing Plaintiff's statements about the intensity, persistence, or functionally limiting effects of his symptoms with the objective medical evidence. AR 19-21. The Commissioner argues that the ALJ did not need to discuss the persuasiveness of Dr. Taubenfeld's report because it was not a "medical opinion" as defined by the Code of Federal Regulations for these purposes.

For claims filed on or after March 27, 2017, a medical opinion is a "statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the abilities listed in [other paragraphs] of this section." 20 C.F.R. § 416.913(a)(2). For adult claimants, these impairment-related limitations include: the "ability to perform physical demands of work activities" like sitting, standing, and walking; the "ability to perform mental demands of work activities" like understanding, remembering, concentrating, or responding appropriately to supervisors or work pressures; the "ability to perform other demands of work" like seeing or hearing; and the "ability to adapt to environmental conditions" like fumes. 20 C.F.R. § 416.913(a)(2)(i)(A)-(D).

The Commissioner argues that Dr. Taubenfeld did not present a medical opinion because his evaluation did not assess Plaintiff's ability to perform various demands of work activities. Dr. Taubenfeld, however, provided quantitative and qualitative assessments of Plaintiff's cognitive abilities and behavioral challenges with examples that address the statutory examples above. AR 334-41. These evaluations "translate into specific functional deficits which preclude

work activity." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999); *cf.*

*Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 691-92 (9th Cir. 2009) (contrasting

diagnoses or statements of the claimant's functional capacity, which qualify as medical opinions,

with recommendations for the claimant to cope with his symptoms, which do not).

Dr. Taubenfeld also explicitly refers to some of Plaintiff's symptoms presenting challenges to his

"occupational performance." AR 513. Dr. Taubenfeld thus provided a medical opinion in the

form of his evaluation. Accordingly, the ALJ erred in failing to discuss the persuasiveness of

Dr. Taubenfeld's medical opinion.

The Commissioner further contends that even if the ALJ erred by failing to address

Dr. Taubenfeld's opinion, this failure was harmless error. Plaintiff argues that Dr. Taubenfeld's

examination led Lane County's Developmental Disability Services to assess Plaintiff as

requiring "active monitoring . . . during all or almost all community activities." AR 363. Plaintiff

notes that the vocational expert stated that this requirement would rule out competitive

employment for Plaintiff if incorporated into the RFC. Plaintiff thus contends that the ALJ

prejudiced Plaintiff by reaching a different conclusion about Plaintiff's disability without

addressing Dr. Taubenfeld's report. The Court agrees that the ALJ committed harmful error in

failing to discuss the persuasiveness of Dr. Taubenfeld's medical opinion.[5]

---

[5] Plaintiff argues that the ALJ erred by discounting Dr. Taubenfeld's opinion for two
other reasons as well. The Commissioner does not respond to these arguments, and so has
waived its response. *See, e.g.*, *Jeffrey C. v. Kijakazi*, 2023 WL 4760603, at *3 (D. Or. July 26,
2023) ("The Government's failure to defend Plaintiff's allegations of error, however, is a
concession of those alleged errors."); *Megan S. v. Berryhill*, 2019 WL 1919169, at *5 (D. Or.
Apr. 30, 2019) (finding that the Commissioner waived any argument that the ALJ's conclusion
was legally sufficient by failing to respond to the plaintiff's contentions).

### b. Case Manager Williamson

Plaintiff next argues that the ALJ erred in discounting the opinion of Plaintiff's Lane County Developmental Disabilities Services case manager, disabilities specialist Hannah Williamson. She provided a letter in December 2020 in support of Plaintiff's disability claim, explaining that Plaintiff needs daily support with social interactions, communication, budgeting, meal preparation, transportation, and other activities of daily living. AR 302. Williamson also provided a function report for Plaintiff dated June 6, 2019, AR 532, and a Needs Assessment dated July 24, 2018, AR 608. In these reports, Williamson noted that Plaintiff is blind in his right eye and has poor vision in his left, "struggles with depth perception, uneven terrain, curbs, etc., and needs support with mobility." AR 532; *see also* AR 612 ("Depth perception is believed to cause falls, bruising, some swelling, and spained [sic] wrist.").

The ALJ did not mention any of Williamson's reports. The Commissioner responds that the ALJ did not need to do so because decisions by other governmental agencies, including state agencies, are "inherently neither valuable nor persuasive." 20 C.F.R. § 416.920b(c)(1). The disability determinations of other governmental agencies are not binding on the ALJ, but the ALJ must still "consider all of the *supporting evidence* underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence . . . ." 20 C.F.R. § 416.904 (emphasis added). The ALJ thus erred in ignoring without comment Williamson's opinions, which were supporting evidence underlying Lane County's disability determination.

Plaintiff argues that this error was harmful because, contrary to Williamson's observations, the ALJ found that the record "does not establish any resulting functional limitations that would significantly affect the claimant's ability to perform basic work activities" and so did not incorporate this limitation into the RFC. AR 17, 19. "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert testimony has no evidentiary

value to support a finding that the claimant can perform jobs in the national economy." *Bray*, 554 F.3d at 1228. Had the ALJ found Williamson's opinions persuasive about the limitations caused by Plaintiff's vision impairments, then the ALJ likely would have incorporated Plaintiff's vision challenges in his RFC and offered a different set of hypothetical limitations to the vocational expert. This omission thus was harmful error.

### c. QMHP Van

Plaintiff also argues that the ALJ erred in discounting the medical opinion of Joanna Van, MSW, a qualified mental health professional (QMHP). Van wrote a letter on Plaintiff's behalf, dated November 23, 2020. AR 466. In this letter, Van stated that she has known Plaintiff for more than 13 years, sees Plaintiff and his family regularly, and has observed Plaintiff struggle with communication, emotional regulation, hyper-fixation, fine motor skills, and other areas of developmental growth. *Id.* Van concluded that she feels Plaintiff's autism spectrum disorder "has a profound effect on his ability to seek, follow necessary steps, interview, and be able to hold/maintain employment successfully into his adulthood." *Id.*

The ALJ rejected Van's medical opinion as inconsistent with two other pieces of evidence in the record. AR 21. First, the ALJ asserts that contemporaneous evidence reflects that Plaintiff was "pleasant" and "alert" within a clinical setting. AR 21, citing AR 411 (chart notes from January 22, 2020). This evidence comes from an office visit in which the physician's assistant provider describes that Plaintiff's mother was "the speaking person." AR 410. It was part of a boilerplate description of Plaintiff's "General Appearance." Contemporaneous treatment notes from the same clinic but other physicians do not describe Plaintiff's general appearance as "pleasant." *See, e.g.*, AR 423; AR 426. This cherry-picking does not provide a legitimate reason to discount Van's longtime observations of Plaintiff's behavior and limitations.

Second, the ALJ rejects Van's opinion as inconsistent with Plaintiff's activities of daily living. "Such a conflict may justify rejecting a treating provider's opinion." *Ghanim*, 763 F.3d at 1162 (noting that conflicts with a claimant's daily activities could provide a specific and legitimate reason to discount a medical source's opinion). This rationale, however, fails for the reasons stated above in discussing Plaintiff's subjective symptom testimony. The ALJ does not explain how Plaintiff's activities of daily living conflict with Van's medical opinion, and the record does not indicate that they do. The ALJ thus erred in disregarding Van's opinion.

## C. Lay Witness Testimony

### 1. Standard

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony about a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114. However, "a lack of support from the 'overall medical evidence' is [] not a proper basis for disregarding [lay witness] observations. The fact that lay testimony and third-party function reports may offer a different perspective than medical records alone is precisely why such evidence is valuable at a hearing." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (citations omitted) (citing cases and concluding: "A lack of support from medical records is not a germane reason to give 'little weight' to those observations.")).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). Such an error may be harmless, and a court must determine whether the error is "'inconsequential to the ultimate nondisability determination' in the context of the record as a whole." *Id.* at 1122 (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008)). The error is harmless, for example, "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Id.* at 1117. When an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

### 2.  Analysis

Plaintiff argues that the ALJ committed harmful error by failing to acknowledge two lay witness statements: one from Plaintiff's mother and another from a close family friend. The Commissioner responds that the ALJ was not required to explain why he discounted Plaintiff's lay witness testimony under the revised regulations. The Commissioner further argues that even if the ALJ were required to do so, this error was harmless for the same reasons that the ALJ discounting Plaintiff's subjective symptom testimony was harmless, as well as because the lay witness testimony did not introduce any limitations that Plaintiff did not describe.

Plaintiff presented two lay witness testimony reports. In the first, Plaintiff's mother submitted a Third-Party Function Report dated February 17, 2020. AR 243-55. Plaintiff's mother wrote that: she and Plaintiff spend between two and 16 hours per day together; Plaintiff's

sensory issues require that his mother brush his hair for "about two hours" a day, prevent

Plaintiff from wearing certain clothing, and require that Plaintiff have wipes to use the toilet;

Plaintiff's mother gives Plaintiff injections, applies topical medicines, and must remind Plaintiff

to take his medication at the right time and in the correct dosage; Plaintiff cannot prepare certain

foods or fold his laundry properly due to his motor control issues; Plaintiff "misses spots" when

shaving, mowing the lawn, or sweeping the floor; Plaintiff cannot drive in part because of his

difficulty in following instructions, his right eye blindness, and his anxiety in traffic; Plaintiff's

attention span is limited to "a few minutes in intervals"; and Plaintiff needs information and

instructions repeated and explained in different ways, among other observations. *Id.*

      In the second lay witness report, family friend Daylene H. submitted a letter containing

her observations of Plaintiff's functional limitations over the nine years that Daylene was a close

family friend. AR 306-07. Daylene stated that she sees Plaintiff's family each week and worked

with Plaintiff's mother in the Developmental Disabilities field, in which Daylene is a specialist.

AR 306. Daylene also is Plaintiff's emergency contact. *Id.* Daylene observed that: Plaintiff needs

assistance to complete repetitive tasks, set alarms, and follow directions; Plaintiff can react with

hostility or defiance to others; Plaintiff "at times does not understand what is expected of him or

may not understand or agree with the reasons why things are expected"; and other symptoms

especially of Plaintiff's autism spectrum disorder. AR 306-07. Daylene concluded that Plaintiff

"would not be able to obtain or maintain work or provide for his own care needs financially."

AR 307.

      The ALJ evaluated neither lay witness report. The ALJ mentioned Plaintiff's mother's

report only to say that she "confirmed that [Plaintiff] has difficulty communicating what he

wants to say—and that he struggles to understand non-verbal communication." AR 18. The ALJ

did not otherwise cite Plaintiff's mother's testimony or Daylene's letter. An ALJ only needs "germane" reasons for rejecting lay witness testimony. *Molina*, 674 F.3d at 1114. Here, however, the ALJ provided no reasons at all to discount the two lay witness reports. Ignoring the opinions and not implementing the limitations discussed equates to rejecting the opinions. Rejecting Plaintiff's lay witness testimony without comment was legal error. *Stout*, 454 F.3d at 1053.

The revised regulations describing how to evaluate medical opinion testimony state that nonmedical lay statements need not be analyzed using the *medical* statement criteria. *See* 20 C.F.R. § 416.920c(d). The Commissioner argues that this revision means that an ALJ need not provide *any* reason for discounting nonmedical lay witnesses. The Court has repeatedly found this argument unpersuasive. *See, e.g.*, *John H. v. Kijakazi*, 2022 WL 8035418, at *8 (D. Or. Oct. 14, 2022). The Court finds the Commissioner's argument unpersuasive here for the same reasons.

The Commissioner also argues that any error the ALJ committed in failing to address the lay witnesses' submissions was harmless because the lay testimonies identified no limitation not already accounted for in Plaintiff's symptom testimony. Thus, argues the Commissioner, the Court can discount the lay testimony for the same reasons the ALJ rejected Plaintiff's testimony. The Court disagrees that the lay witness testimony does not identify any different limitations than does Plaintiff's testimony. Further, because the Court rejected the ALJ's reasons for discounting Plaintiff's testimony, those reasons also do not provide a basis to discount the lay testimony.

**D.  Remand**

"The decision whether to remand for further proceedings or for an award of benefits is within our discretion." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Although a court should generally remand to the agency for additional investigation or explanation, a court

has discretion to remand for immediate payment of benefits. *Treichler*, 775 F.3d at 1099-100. The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine whether a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would have to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true just because the ALJ made a legal error. *Id.* at 408.

Plaintiff asks the Court to apply the credit-as-true doctrine and remand this case for immediate payment of benefits. The Court agrees that the ALJ committed reversible error for several reasons. The Court, however, does not find that the record is free of inconsistencies and ambiguities. For example, it is unclear whether an ALJ who addressed Plaintiff's visual and dexterity limitations would find him disabled, or if not, how those limitations would affect Plaintiff's RFC. The ALJ also relied on assessments by state psychological consultants who conclude that, contrary to Dr. Tauberman, Plaintiff "does have severe limitations that would

PAGE 24 – OPINION AND ORDER

reasonably restrict his function, but not to the extent keeping him from work tasks." AR 68; *see also* AR 73, 87. The record contains contradictory conclusions about Plaintiff's disability eligibility that require an ALJ to resolve. The Court thus remands for further proceedings.

## CONCLUSION

The Court REVERSES the Commissioner's decision that Plaintiff was not disabled AND REMANDS for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 8th day of September, 2023.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge